IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN LEMOINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge James F. Holderman |
| THE TRAVELERS HOME & MARINE ) | |
| INSURANCE COMPANY, ) | No. 13 C 5796 |
| ) | |
| Defendant. ) | |

ORDER DENYING TRAVELERS' MOTION
TO DISMISS SECTION 155 CLAIM

JAMES F. HOLDERMAN, District Judge:

For the reasons stated in the Statement section of this order, defendant Travelers' Motion to Dismiss Section 155 Claim [9] is denied. Travelers' amended answer, which should address both Count I and Count II of plaintiff Brain Lemoine's complaint, and should set out any affirmative defenses Travelers desires to assert, is due 11/27/13. Counsel are to confer and file an agreed Form 52 by 12/4/13. Parties are encouraged to discuss settlement. Case set for status report at 9:00 a.m. on 12/10/13.

Statement

Plaintiff Brian Lemoine's ("Lemoine") two-count complaint against defendant The Travelers Home & Marine Insurance Company ("Travelers") seeks damages and declaratory judgment for breach of a homeowner's insurance contract in Count I and recovery under 215 ILCS 5/155 in Count II. The alleged facts begin with a July 11, 2011 "severe storm" accompanied by "strong winds" that "caused a very large tree with a diameter in excess of 50 inches to blow over and crash into" (Compl. ¶ 8) Lemoine's "single family residence at 28277 W. North Street, Wauconda, Lake County, Illinois." (Compl. ¶ 1.)

Travelers' motion, (Dkt. No. 9), seeks dismissal of Count II, the section 155 claim. The key basis asserted by Travelers in its motion, as clarified in its reply (Dkt. No. 17 ("Trav.

Reply")), is the purported "failure of Lemoine to allege facts why Travelers' conclusion that the structural damage was not caused by the tree but, rather, by excluded causes of loss is vexatious and unreasonable." (Trav. Reply at 3.)

Moreover, Travelers in its Reply concedes that it does not dispute Lemoine's complaint's allegations that:

- On July 11, 2011, during a severe storm, strong winds caused a very large tree to crash onto Lemoine's home. (Pl.'s Resp. 6, citing Compl. ¶ 8);

- The tree caused substantial structural damage (¶ 9);

- On July 12, 2011 Lemoine asked Travelers to immediately come see the tree and damage to the home, but "Travelers refused to send any claim representative at that time" (¶¶ 11-12);

- No one from Travelers came to see the size of the tree before it was removed (¶ 20);

- Travelers obtained a report showing major structural damage (¶ 23, Ex. E);

- Travelers refused to meet with Lemoine's attorney (¶ 24, Ex. F); and

- Travelers denied Lemoine's claim despite evidence of significant structural damage (¶¶ 16, 20).

(*Id.* at 2.)

Travelers argues that "the foregoing allegations are no more relevant to pleading a claim for statutory damages than alleging that the house was painted blue when the tree fell into it." (*Id.*)

The Seventh Circuit law is clear that a district court

> . . . may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice. *Geninosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012, *see also Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759,764 (7th Cir. 2010); *Hecker v. Deere & Co.,* 556 F.3d 575, 582-83 (7th Cir. 2009); *Tierney v. Vahle*, 304 F.3d, 734, 738-39 (7th Cir. 2002); s*ee, e.g., Bogie,*[*v. Rosenberg,* 705 F.3d 603, 608-09 (7th Cir. 2013)] (considering video cited in and attached to complaint); *Brownmark Films, LLC v. Comedy Partners,*, 682 F.3d 687, 690-91 (7th Cir. 2012) (considering videos cited

2

in complaint in support of copyright infringement claim and submitted by defendant in support of motion to dismiss).

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Attached to Lemoine's complaint is, in addition to other pertinent materials, Exhibit F, the October 18, 2012 letter to Travelers from Lemoine's attorney, Mr. Peter Szatkowski, explaining the basis why homeowner Brian Lemoine disagreed with Travelers' proposed $17,844.31 settlement amount for the home's insured loss (later raised an additional $4,200 to pay for the tree's removal and, therefore, totaling $22,044.31), and asserting in sufficient detail the basis for Lemoine's section 155 claim alleged in Count II.

That letter, Exhibit F to Lemoine's complaint, when considered with the other factual statements in the complaint's allegations and other attachments, distinguishes the cases cited by Travelers, and factually explains in adequate detail why section 155 is appropriately alleged, as it has been in Lemoine's complaint. Exhibit F states in its text as follows:

> I represent Travelers policy holder Brian LeMoine in the above-captioned claim. I am writing to you because of Brian's disagreement with the property damage adjustment made by Travelers' claims personnel. The total damages adjustment figure calculated by Travelers was $17,844.31. The insurance damages adjustment was not correctly assessed and calculated and the initial adjustment disregarded the fair market value of the home before the storm.
>
> Travelers' damage adjustment calculations were based largely on a December 21, 2011 forensic report by Donan Engineering Company employee Scott Muka. In his report, pages 7-10, a copy of which is enclosed, Mr. Muka concluded that much of the damage he observed on December 9, 2011, was due to "improper design and/or construction" of Brian's home. As a consequence of this report, Brian believes that the damages adjustment calculation was significantly underestimated.
>
> After receipt and review of a letter from Travelers Claim Representative Dario Cruz, (dated February 16, 2012), Brian believes that the conclusions reached by a Travelers-retained forensic specialist form Donan Engineering (Muka) and Mr. Cruz, were in error. Specifically, Brian believes that the severity of the damage done to his home was vastly underestimated. This underestimate was due to a lack of understanding by both Muka and Cruz of the tremendous size of the tree which had been knocked down by the storm force winds on the date of loss and which landed squarely on top of Brian's home.

3

No Travelers claims representatives ever saw the actual tree as it laid on top of Brian's home because Travelers initial claim representative Kyle McMillan advised Brian by phone on July 12, 2011, that he could not get to the accident site quickly and he "did not need to see the tree." McMillan then instructed Brian to immediately remove the tree. Tree removal was completed expeditiously and below the Travelers allotment of $6,000 on July 15, 2011.

Muka, who visited the property on December 9, 2011, almost five full months after the storm, concluded that the majority of the condition of the house he inspected was essentially caused by improper design and/or improper construction of the house. Although Muka references the size of the remains of the tree truck (sic) which crushed the house, he never saw any photographs of the fallen tree as it laid across a significant portion of the roof and deck. He would therefore, have no idea just how this massive double-trunked tree damaged the entire structure.

No Travelers claims representative ever came to the accident location to inspect the tree as it laid upon Brian's home. No Travelers employee took any photographs of the tree as it crushed the roof, walls, and foundation of Brian's home. The immediate damage caused by this very large tree, with two trunks and measuring 51 inches in diameter at its base, was not observed or documented by Travelers claim representatives. There is no question that storm force winds caused these extremely large tree trunks to land squarely upon the roof of Brian's this house. His house was not simply damaged by just a mere tree branch. Brian took pictures of the tree as it lay upon his home, but no Travelers representative was interested in viewing them before any damage reports were authored by Travelers in-house forensic specialist James Zwijack or its outside retained forensic expert Scott Muka. I had asked claims representative Cruz for a face-to-face meeting with Brian and me on a date/time and location of his choice so that we could show him the pictures. Mr. Cruz flatly refused such a meeting. If you would like, we can send you a duplicate set of those photographs of the tree as it laid on top of the roof and photographs of the actual damage caused by the tree on the inside of this structure.

Muka's conclusions are belied by Traveler's own "Claim Investigation Report" dated October 10, 2011, and prepared by Risk Control Forensic Specialist James Zwijack, a copy of which is also enclosed. Mr. Zwijack apparently inspected Brian's house on July 28, 2011, seventeen days after the storm. The fallen tree was, of course, already removed from the property. Mr. Zwijack correctly concludes that the force of the tree appears to have pushed the roof framing from west to east and that this impact bowed out the east exterior wall and separated drywall near the east patio doors. He documents these conditions in his report photographs. His report clearly documents structural damages to the house caused by the crush of the massive tree upon the roof and other exterior structures. Mr. Zwijack was unable to make other structural evaluations due to tree damage which he outlines in his report. He never asked for or reviewed Brian's damage photographs which could have helped in his evaluations. Below is a list of the house damage that Brian believes was considered in Travelers' initial adjustment and the house damage that was not correctly considered:

4

ADDRESED DAMAGE AREAS

The following items of damage were addressed in the preliminary estimate received by electronic mail from Mr. Cruz on February 16, 2012.

Reroof
Drywall repair and painting
Exterior deck repair

Preliminary estimate of adjustment   $17,844.31
Actual cost of tree removal                4,200.00
Total amount of reimbursement        $22,044.31

UNADDRESSED DAMAGED AREAS

These are the damages that were noticeably visible immediately after the storm passed.

Walls and ceilings:

- Shifted-structural damage
- Shower wall tiles buckling from shifting

Windows and doors:

- West side (Lakeside) windows have seal leakage between glass panes
- Door does not lock properly

Floors:

- Shifted - structural
- Water damages

Exterior:

- Roofline shifted – structural
- Exterior siding shifted – structural
- Fascia damage

Foundation:

- North wall cracks (incorrectly identified by Jim Zwijack as south wall)
- West wall at south end shifted
- Exterior landing under deck cracked and shifted

Brian wishes to be fairly compensated by Travelers for the significant damage caused by the massive tree fall so that he can rebuild his home. The

5

compensation Travelers has offered to date is not fair and reasonable. The fair market value of his residence before the storm was $150,714 as evidenced by the 2010 Lake County, (IL) property tax assessment, a copy of which is enclosed.

The decision by Travelers representative Cruz to compensate Brian for his loss in an amount under $17,000 through reliance on a report by a Travelers-paid "expert" (Donan) while refusing to review Brian's damages photographs of the tree before its removal may exhibit bad faith in the resolution of this claim. Donan concludes that the current structural problems are all the result of poor design and construction. However, Travelers chose to insure (underwrite) the property for damages caused by storm events. Travelers presumably inspected Brian's home for existing structural or other problems before issuing a policy of insurance. No notice was given to Brian that Travelers would not insure the home until certain structural or other problems, such as alleged poor design or construction, were corrected. Rather, Travelers set an insurance premium price based on the then-current condition of the home at the time the initial policy was underwritten and issued. Travelers then accepted insurance premium payments from Brian for several years before the storm damage. Now Travelers denies Brian fair compensation for the storm damage claiming that the condition observed in the home five months after the storm by the Travelers-paid expert was mostly due to poor design/construction and not to the massive crushing . . . .

(Ex. F.)

Considering the totality of Lemoine's complaint's factual detail, Lemoine's complaint alleges a sufficient basis, under the pleading standard of *Iqbal* and *Twombly*, for recovery under section 155, to require an amended answer by Travelers which is to be filed no later than 11/27/13. It appears at this juncture that if the complaint's asserted facts are proven, a verdict and judgment on Count II in plaintiff's favor would be sufficiently supported. *See Ashcroft V. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

                                       ENTER:

                                       */s/ James F. Holderman*
                                       JAMES F. HOLDERMAN
                                       District Judge, United States District Court

Date:   November 13, 2013